# IN THE COURT OF APPEALS OF IOWA

No. 22-1449
Filed March 29, 2023

**IN THE INTEREST OF C.C.,**
**Minor Child,**

**S.S., Mother,**
    Petitioner-Appellee,

**J.C., Father,**
    Respondent-Appellant.
_____

Appeal from the Iowa District Court for Wright County, Hans Becker, District Associate Judge.

A father appeals the private termination of his parental rights to twelve-year old C.C. **AFFIRMED.**

Alesha M. Sigmeth Roberts of Sigmeth Roberts Law, PLC, Clarion, for appellant.

Megan R. Rosenberg of Cady & Rosenberg Law Firm, P.L.C., Hampton, for appellee.

Taylor Jay W. Nederhoff, Iowa Falls, attorney and guardian ad litem for minor child.

Considered by Bower, C.J., and Badding and Buller, JJ.

**BOWER, Chief Judge.**

A father appeals the private termination of his parental rights to twelve-year-old C.C., whom he had with a woman he never married.  We affirm.

We review private termination proceedings de novo.  *See In re B.H.A.*, 938 N.W.2d 227, 232 (Iowa 2020).  We are not bound by the juvenile court's findings of fact, but we do give them weight, especially in assessing the credibility of witnesses.  Iowa R. App. P. 6.904(3)(g).

In this private termination proceeding, the mother must establish by clear and convincing evidence the father has abandoned the child within the meaning of Iowa Code section 600A.8(3) (2021).  For our purposes here,

> [A] parent is deemed to have abandoned the child unless the parent maintains substantial and continuous or repeated contact with the child as demonstrated by contribution toward support of the child of a reasonable amount, according to the parent's means, and as demonstrated by any of the following:
> (1) Visiting the child at least monthly when physically and financially able to do so and when not prevented from doing so by the person having lawful custody of the child.
> (2) Regular communication with the child or with the person having the care or custody of the child, when physically and financially unable to visit the child or when prevented from visiting the child by the person having lawful custody of the child.

Iowa Code § 600A.8(3)(b).  A parent's subjective intent unsupported by the evidence manifesting that intent is immaterial and does not preclude a finding of abandonment.  *See id.* § 600A.8(3)(c).

The mother must also prove by clear and convincing evidence that termination of the father's parental rights is in the child's best interests.  *B.H.A.*, 938 N.W.2d at 232.  "The best interest of the child subject to the proceedings of this chapter shall be the paramount consideration in interpreting this chapter."

Iowa Code § 600A.1(1). "The best interest of a child requires that each biological parent affirmatively assume the duties encompassed by the role of being a parent." *Id.* § 600A.1(2). When determining whether a parent has affirmatively assumed this duty, the court must consider, but is not limited to, a parent's "fulfillment of financial obligations, demonstration of continued interest in the child, demonstration of a genuine effort to maintain communication with the child, and demonstration of the establishment and maintenance of a place of importance in the child's life." *Id.* "This court has also borrowed from the statutory best-interest framework outlined in Iowa Code chapter 232." *B.H.A.*, 938 N.W.2d at 232. Consequently, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2).

> Of importance is the child's emotional and psychological health, and the closeness of the parent–child bond. Finally, this court has said, "It is well-settled law that we cannot deprive a child of permanency after the [petitioner] has proved a ground for termination . . . by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child."

*B.H.A.*, 938 N.W.2d at 232 (alterations in original) (internal citations omitted).

On our de novo review, there is clear and convincing evidence of the trial court's finding that the father "spent a total of ten minutes with [C.C.] in the past seven years, even though he was living out in the community between 2015 until his incarceration in July 2021." The father has been arrested more than a dozen times during the child's lifetime. He is currently incarcerated on drug-related and burglary charges.

The father has not attempted to visit or maintain communication with C.C. on a monthly basis over the past seven years. And even though he has been incarcerated since July 2021, the first time he attempted to call C.C. from jail or prison was in June 2022, between the first and second day of the termination-of-parental-rights (TPR) trial. Nor has the father attempted to send the child a letter or present in the past seven years, though he knows where the child, the mother, and the maternal grandparents reside.[1] The father admitted the only written communication he has attempted to send to C.C. over the past five years were a few Facebook messages sent in October 2020 and January 2021. As the trial court found, "[T]he father spent more time testifying at the TPR trial than he spent [in] total attempting to contact and maintain a relationship with [C.C.] over the past seven years."

Nor has the father provided any financial support since 2014. His claims of inability to provide any support are belied by the fact that his prison wages have been garnished to support another of his children—admittedly intermittently and delinquent.

The child's guardian ad litem (GAL) reported the child stated she had no contact with her father in at least the past four years and did not wish him to continue to be her father because they did not have any relationship whatsoever. The GAL recommended termination of the father's parental rights.

We agree with the district court's assessment:

Although abandonment might not be in [the father]'s heart or his head, it is deeply entrenched in his actions. The court finds that [the

---

[1] His claims that his efforts were stymied by the mother are not supported by the record.

father] abandoned [C.C.] by failing to maintain substantial and continuous or repeated contact with the child and such lack of contact has been caused by [the father's] own decisions and actions.

Because there is no relationship between the father and child and considering the "best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child," Iowa Code § 232.116(2), we find termination of the father's parental rights is in the child's best interests.  We affirm the termination of the father's parental rights.

**AFFIRMED.**